# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CC-01116-COA

**PUSH PHILLIPS**                                                        **APPELLANT**

**v.**

**HANCOCK COUNTY SHERIFF'S**                                   **APPELLEES**
**DEPARTMENT AND ITS HANCOCK COUNTY**
**CIVIL SERVICE COMMISSION**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/25/2015 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ANDREW AUSTIN CLARK |
| | RUSSELL S. GILL |
| ATTORNEYS FOR APPELLEES: | WYNN E. CLARK |
| | ALBERT LIONEL NECAISE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | AFFIRMED DECISION OF THE HANCOCK COUNTY CIVIL SERVICE COMMISSION |
| DISPOSITION: | AFFIRMED - 09/06/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., WILSON AND GREENLEE, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Push Phillips was terminated from his position as a deputy sheriff with the Hancock County Sheriff's Department because he left the state for approximately thirty-six to forty-eight hours after Hurricane Katrina made landfall in Hancock County in August 2005. The Civil Service Commission for the Hancock County Sheriff's Department affirmed Sheriff Steve Garber's decision to terminate Phillips, and the Hancock County Circuit Court affirmed the commission's decision. On appeal, Phillips argues that the commission's

decision was not supported by substantial evidence and was arbitrary and capricious. Phillips contends that his termination was not in good faith and for cause. He further alleges that he was fired in retaliation for his prior civil service complaints. Like the circuit court, we conclude that the commission's decision, which rejected these claims, was supported by substantial evidence and was not arbitrary or capricious. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 1990, the Legislature enacted a local and private law establishing a three-member Civil Service Commission for the Hancock County Sheriff's Department. The law authorizes the commission to promulgate rules and regulations regarding all personnel administration matters within the department, such as hiring, promotions, and disciplinary actions. 1990 Gen. Laws. ch. 802, § 4. The law and its implementing regulations provide that a civil service employee may be terminated only "for cause" and "not for political or religious reasons." *Id.* § 11. An employee who is terminated by the department has a right to a hearing before the commission, and if the commission "find[s] that the disciplinary action was made for political or religious reasons, or was not made in good faith for cause," it "shall order the immediate . . . reemployment of such person." *Id.*

¶3.     The commission's rules and regulations provide a non-exclusive list of grounds for disciplinary action, including the "[w]illful violation of any lawful and reasonable . . . order or direction made or given by a superior where such violation has amounted to insubordination or serious breach of proper discipline." Hancock County Sheriff's Department General Order 3-01 provides that "leaving the work site without permission

2

where there exists a threat to life or human safety" is a "Group III offense." Group III offenses are considered "most serious" and may result in a reprimand, suspension, demotion, or termination.

¶4. Phillips was hired by the Hancock County Sheriff's Department as a deputy sheriff in July 2000. Between 2003 and 2005, Phillips made a handful of complaints related to civil service rules. In 2003, he complained that he had been required to sign an acknowledgment that he was an at-will employee who could be fired for any reason, which conflicted with his rights as a civil service employee. In 2004, he complained that, despite his repeated requests, the department and commission would not provide him with a copy of a current version of the civil service rules. And in 2005, he alleged that the department allowed another officer to test for a promotion even though the officer was ineligible for the promotion.

¶5. On Friday, August 26, 2005, Phillips was on mandatory "comp time leave" because he had accrued excess compensatory time. However, Major Bobby Underwood, the department's chief of patrol, called Phillips that evening and instructed him to report for duty the next night under the immediate supervision of Lieutenant Chris Russell, a patrol supervisor. Phillips worked the night shift on patrol under Russell's supervision on August 27 and 28, 2005, as Hurricane Katrina approached the Gulf Coast.

¶6. On Sunday night, August 28, 2005, Phillips and the rest of his patrol shift sought shelter at Russell's apartment, which was north of Highway 90 in Bay St. Louis. Hurricane Katrina made landfall in Hancock County early in the morning on Monday, August 29, 2005. The rising water at Russell's apartment eventually forced the officers to move to a second

3

story apartment. That afternoon, the water began to recede, and Russell and Phillips decided to try to walk to the sheriff's office. On the way, they met Major Underwood and another officer, who were in a van. Underwood gave Russell and Phillips a ride to the sheriff's office. Captain Joe Herrin, the department's captain of patrol, told the officers who were able to reach the office to wait there for further instructions.

¶7. On Tuesday, August 30, 2005, Phillips and Russell joined other officers who were using a school bus to transport stranded citizens and deliver supplies to shelters and hospitals. Later that day, Phillips asked Captain Herrin for permission to retrieve his truck, which he thought could be of use, from a friend's house in the northern part of the county. Captain Herrin gave Phillips permission to retrieve the truck. When Phillips and Russell returned in Phillips's truck, they asked Captain Herrin for permission to check on Phillips's wife, who was working at a local nursing home, and to check on Russell's family in Biloxi. Again, Captain Herrin granted permission.

¶8. Phillips testified that by Tuesday evening, his "wife was going through a lot of mental duress" and was "actually freaking out," so he felt like he should take her to stay with her mother in Florida, which is where their children were staying. On Wednesday, August 31, 2005, Phillips asked Russell for permission to take his wife to Florida, promising to be gone no more than thirty-six hours. Russell and Phillips both testified that Russell gave Phillips permission to take his wife to Florida.

¶9. Phillips took his wife to Florida on Wednesday and returned to Hancock County on Thursday, September 1, 2005. When he returned, Phillips contacted Russell for instructions,

4

but Russell told him to report to Investigator Andre Fizer. Fizer told Phillips to report back to work the next day.

¶10. On Friday, September 2, 2005, Phillips and Fizer went to Walmart to pick up portable radios and other supplies. In the Walmart parking lot, Sheriff Garber pulled Phillips aside and fired him on the spot for leaving the county during a state of emergency. Phillips testified that he tried to explain to Garber that Russell had given him permission to leave, but Garber responded, "You have been a thorn in my side with all of these Civil Service complaints that you have made, and now that it is a state of emergency, I can hire and fire at will. Turn in your s— and get the f— out. You're fired."

¶11. Sheriff Garber denied making any such statements to Phillips. Garber testified that he simply told Phillips that he was terminated because he left the county during an emergency. Garber testified that Phillips was "a good officer" and that he had "nothing personal against him," but he violated a "policy" that "was clear."

¶12. On September 14, 2005, Phillips's attorney wrote to counsel for the commission and requested Phillips's immediate reinstatement on the ground that his termination by Sheriff Garber violated due process and the commission's rules. On November 21, 2005, Phillips filed a formal notice of appeal and demand for investigation and reinstatement with the commission. On January 3, 2006, Sheriff Garber provided Phillips with a memorandum informing him of the reason for his termination. The memorandum stated in part: "[Y]ou violated . . . General Order 3-01 III Group III Offense 3.(M.) Leaving the work site without permission where there exists a threat to life or human safety. In other words you left your

5

post when this County was in the middle of the wors[t] cris[i]s in [its] history."

¶13. On January 13, 2006, Phillips filed an appeal in circuit court. Phillips argued that he was entitled to bypass the commission because, in the aftermath of Hurricane Katrina, a quorum of the commission could not be located to hold a hearing. Apparently, there was little or no action in the case for more than five years. In 2011, Phillips and the commission filed a joint motion to remand the case to the commission for a hearing, which the circuit court granted on May 9, 2011.

¶14. On October 1, 2013, the commission held a hearing on Phillips's termination. At the time of the hearing, Phillips was a lieutenant and patrol commander for the Bay St. Louis Police Department. He began working for the Bay St. Louis Police Department in November 2006 after being unemployed for approximately thirteen months. Phillips asked the commission to overturn his termination and reinstate him to his former position. He also requested backpay as compensation for approximately nine months of his unemployment.

¶15. At the hearing, Garber testified that at the time he terminated Phillips he did not know that Russell had given Phillips permission to leave Hancock County. In fact, until the hearing, Garber believed that Phillips had not been on duty at any time between Hurricane Katrina's landfall and Friday, September 2, 2005.

¶16. Russell and Phillips both testified that they believed that Russell had the authority, as Phillips's immediate supervisor, to give Phillips permission to leave the county. However, Sheriff Garber denied that Russell had such authority. Garber testified that only Major Underwood, as chief of patrol, or Captain Herrin, as captain of patrol, could have given

6

Phillips permission to leave. Garber testified that he would have terminated Phillips even if he had known all of the facts that were brought out at the hearing. In Garber's view, leaving the county without proper authorization (from himself, Major Underwood, or Captain Herrin) during a state of emergency was an offense that required termination.

¶17. In November 2013, the commission denied Phillips's request for reinstatement by a 2–1 vote. In its order, the commission found that Phillips violated General Order 3-01 and that he was terminated in good faith for cause, not for political reasons.

¶18. Phillips appealed the commission's decision to the circuit court, arguing that there was not substantial evidence that his termination was made in good faith and for cause and that the commission's decision was arbitrary and capricious. On June 26, 2015, the circuit court affirmed the commission's decision. The court concluded that there was substantial evidence to support the commission's finding that Phillips violated General Order 3-01 by leaving his post without obtaining permission from an appropriate person and that Phillips's termination was in good faith for cause, not for political reasons. Phillips filed a timely notice of appeal from the final judgment of the circuit court.

**DISCUSSION**

¶19. On appeal, Phillips argues that the commission's decision was arbitrary and capricious and was not supported by substantial evidence. He argues that Garber did not terminate him in "good faith for cause" because Russell gave him permission to leave the county. He also argues that "Garber could have reprimanded or suspended [him] rather than terminating him." Finally, he argues that Garber fired him for "political reasons," i.e., his prior civil

7

service complaints.[1]

¶20. "A discharged police officer may appeal his or her termination to a civil service commission, which shall determine whether the decision to terminate the officer 'was or was not made for political or religious reasons and was or was not made in good faith for cause.'" *Renfro v. City of Moss Point*, 156 So. 3d 913, 917 (¶18) (Miss. Ct. App. 2014) (quoting Miss. Code Ann. § 21-31-23 (Rev. 2007)). Thereafter, the officer may appeal the commission's decision to the circuit court. *City of Vicksburg v. Lane*, 11 So. 3d 162, 164 (¶10) (Miss. Ct. App. 2009). "The circuit court is prohibited from making credibility determinations of the evidence or testimony that was presented to the civil service commission." *City of Laurel v. Brewer*, 919 So. 2d 217, 221 (¶15) (Miss. Ct. App. 2005). A reviewing court "is limited to determining whether the act of the commission was or was not made in good faith for cause." *City of Vicksburg*, 11 So. 3d at 164 (¶10).

¶21. "This Court follows the same standard of review as the circuit court and evaluates whether the commission's ruling is supported by substantial evidence." *Patterson v. City of Biloxi*, 965 So. 2d 765, 766 (¶6) (Miss. Ct. App. 2007). "This Court is not to determine issues of fact regarding whether an employee was guilty of the charge or not, but should only determine whether the commission acted in good faith based on the evidence before it." *City of Laurel*, 919 So. 2d at 222 (¶15). Therefore, we will uphold the commission's decision

---

[1] In his initial demand for reinstatement and appeal to the circuit court, Phillips also argued that his verbal termination without a written statement of reasons or a pre-termination hearing violated due process and the commission's rules. However, after the circuit court granted the parties' joint motion to remand the case to the commission for a hearing, Phillips challenged only the substance of the department's decision to terminate him.

unless it is not supported by substantial evidence or is arbitrary or capricious. *See, e.g.*, *City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988).

¶22. In the present case, the commission's decision upholding Phillips's termination was supported by substantial evidence and was not arbitrary or capricious. Phillips admitted that he left his post—indeed, left the State—in the aftermath of Hurricane Katrina. Katrina is recognized as the most destructive hurricane in the history of this State, and Hancock County suffered some of the most severe damage. Devastation was widespread in Hancock County in the hurricane's aftermath, with some communities essentially destroyed and large areas covered by water. Phillips's departure under these circumstances was a violation of General Order 3-01, which provides that an employee may be terminated for "leaving the work site without permission where there exists a threat to life or human safety." Such a violation is cause for termination under the rules and regulations of the department and the commission.

¶23. Phillips argues that he did not violate General Order 3-01 because Lieutenant Russell gave him permission to leave the state, and both Phillips and Russell testified that Russell had authority to allow Phillips to leave. However, Sheriff Garber testified that only Captain Herrin and Major Underwood had authority to permit an officer to leave the county in the aftermath of Katrina. Moreover, parts of Phillips's own testimony tended to support Sheriff Garber's position. As noted above, Phillips testified that on two prior occasions he had asked *Captain Herrin* for permission to leave his post—once to get his truck and once to check on his wife at her place of work. Phillips did so even though Russell was present on both occasions. A reviewing court does not reweigh the evidence presented to the commission.

9

*City of Laurel*, 919 So. 2d at 221 (¶15). Nor are we "empowered to supervise the intelligence, wisdom or fairness" of the decision to terminate Phillips rather than reprimand or suspend him. *City of Jackson*, 530 So. 2d at 1355. Rather, we ask only whether "there exists credible evidence" to support that decision. *Id.* There was credible evidence that Phillips left the State in the midst of an emergency situation without first obtaining permission from an appropriate person. Under the rules of the department and commission, this offense subjected him to termination. Accordingly, the circuit court properly affirmed the commission's decision.

¶24. Phillips also argues that Sheriff Garber fired him for "political reasons," i.e., in retaliation for his prior civil service complaints. However, Sheriff Garber denied that he terminated Phillips for that reason or made the statements that Phillips attributed to him. Sheriff Garber testified that he fired Phillips solely because he abandoned his post without proper permission in the aftermath of Hurricane Katrina. It was up to the commission to determine whose testimony was more credible. *See City of Laurel*, 919 So. 2d at 221 (¶15). Accordingly, the circuit court properly affirmed the commission's determination that Phillips was not fired for political reasons.

**CONCLUSION**

¶25. The commission's decision affirming Phillips's termination and denying his request for reinstatement was supported by substantial evidence and was not arbitrary or capricious. Therefore, we affirm the judgment of the circuit court upholding the commission's decision.

¶26. **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE**

10

**APPELLANT.**

      **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**